# United States Court of Appeals
## For the First Circuit

No. 10-2153

DEAN F. HATCH and MARY L. HATCH,

Plaintiffs, Appellants,

v.

TRAIL KING INDUSTRIES, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

J. Michael Conley, with whom Kenney & Conley, P.C. was on
brief, for appellant.
Timothy C. Kelleher III and Cooley Manion Jones LLP on
brief for the Massachusetts Academy of Trial Attorneys, amicus
curiae.
Myles W. McDonough, with whom Lawrence J. Kenney, Jr.,
Christopher M. Reilly, and Sloane and Walsh, LLP were on brief, for
appellee.

August 29, 2011

**LYNCH**, **Chief Judge**.    A jury rejected both the negligence and the breach of the implied warranty of merchantability claims brought by the plaintiffs, Dean Hatch and his wife, after Hatch was severely injured at work and left paralyzed from his chest down. Hatch did not bring this suit against his employer, Advanced Drainage Systems, Inc. ("ADS"); it may be he was restricted to an exclusive workers' compensation remedy.  See Mass. Gen. Laws ch. 152, §§ 23-24; Roberts v. Delta Air Lines, Inc., 599 F.3d 73, 77 (1st Cir. 2010).

Rather, he brought suit against Trail King Industries, Inc., the company that had built a specialized trailer for Hatch's employer, following the employer's specifications as to the parts of the trailer which were said to have caused the injuries.  The suit was filed in October 2007 in the U.S. District Court for the District of Massachusetts.  The plaintiffs asserted that the design of the hydraulically operated drop gate of the trailer was defective and that the addition of an inexpensive fixed safety chain or an extended spring-loaded pin would have prevented the accident.  The district court denied cross-motions for summary judgment and the case went to trial.  The Hatches appeal both from the jury instructions on negligence and the implied warranty and from denial of the plaintiffs' motion in limine.[1]

_____

[1]  Before the trial, the plaintiffs filed a motion in limine requesting that the court "exclude the defendant Trail King Industries, Inc. from introducing evidence as to the origin of the

-2-

The district court instructed the jury that a defendant fabricator in the circumstances of this case may have duties under the laws of negligence and implied warranty to injured third parties but that such duties were subject to exceptions, which the court then defined. The jury later asked a question on the implied warranty exception and the court's answer provided an additional gloss. In essence, the court instructed under the Restatement (Second) of Torts § 404 that a defendant who manufactures a product according to the buyer's specifications could not be liable under either a negligence or implied warranty theory unless the design defect was so obvious it would not have been reasonable for the defendant to manufacture according to the design.

On appeal, the plaintiffs argue that these instructions and the answer to the jury's question were in error under Massachusetts law, that the errors infected both the negligence and implied warranty findings by the jury, that the denial of the motion in limine was error, and that they must be given a new trial. Trail King, the fabricator, argues that the instructions were entirely correct, as was the denial of the motion in limine, and that the jury had a number of alternative reasons to reject the plaintiffs' case, so any error is harmless.

design or design history of the subject trailer for purposes of arguing that it lacked a legal duty to produce and deliver a trailer that was reasonably safe." The court denied the motion.

We affirm.

## I.

Trail King is located in South Dakota. Some sixty to seventy percent of the trailers it sells are custom-made, built largely to the specifications of its customers. While Trail King was responsible for the design of the motor vehicle component of the trailer at issue, ADS was responsible for designing and providing Trail King with the specifications for the gates. ADS is the world's "largest manufacturer of corrugated polyethylene pipe" for drainage systems, with thirty-two North American manufacturing facilities and twenty distribution centers. In the 1980s, the ADS Material Handling Committee put together a design for a "hydraulic trailer" that would handle the heavy weight associated with the unloading of ADS's highly successful N-12 plastic pipe product. ADS determined that "[a]n outside flatbed manufacturer [would] build the N-12 trailers using the Material Handling Committee's trailer design." ADS contacted the two largest manufacturers of flatbed trucks, Dakota and Trail King, and awarded the contract to Trail King through competitive bidding. Trail King manufactured approximately 350 N-12 trailers using the designs provided by ADS. ADS was the exclusive user of these trailers.[2] Trailer No. 25019,

_____

[2] ADS runs its own trailer refurbishing centers, where ADS mechanics repair and overhaul equipment and systems including the N-12 trailer hydraulic gates. In 2005, Trail King advised ADS that it had developed remote pilot check valve kits which ADS mechanics could retrofit to older trailers. The check valves were designed

-4-

the trailer at issue in this case, was delivered to ADS in April 1994 and assigned to ADS's Ludlow, Massachusetts plant.[3]

The N-12 trailers are forty-eight feet long with two separate twenty-foot long compartments. Each compartment has ten-foot high sides and a hydraulic gate on the passenger side of the trailer. These hydraulic gates are hinged at the bottom of the trailer and held upright by two hydraulic cylinders attached to a gate upright above the hinge. In addition, each of the gate uprights has a hole that aligns with a corresponding hole on the trailer frame, through which a 3/4" diameter pin is inserted and secured with a cotter pin to ensure that the gate stays in the upright position. The locations of the pin and hole were mandated by ADS.

ADS employees load the pipes through the front and rear of the trailer while the side gate remains in an upright position. Once loaded, ADS employees secure the load with tie-down straps for each compartment, with strap ratchets on the driver's side of the trailer. ADS mandates "driver's side strapping" to prevent the driver from releasing the straps on the passenger's side while

to prevent the hydraulic gate from crashing down in the event that the hydraulics failed to work properly. ADS declined to purchase the kits.

[3] Trail King sold the trailer for $38,791.38 to DL Peterson Trust, which in turn leased the trailer to ADS. At some point between 1994 and 2007, before the accident in this case, the lease ended and ADS acquired title to the trailer.

standing in the pathway of the gate. Under ADS safety procedures for unloading the trailer, drivers remove the pins, release the straps from the driver's side, and then stand aside while operating the gate's hydraulics with a remote electrical switch. As the gate lowers, the pipes roll out.

On February 1, 2007, Hatch was assigned trailer No. 25019 to deliver two loads of pipe (one in each compartment) to a customer in Hyannis, Massachusetts. Hatch was unaware, however, that air had been introduced into the gate's hydraulic system a few days earlier by another driver who had not properly reported the problem. Upon arriving at the customer drop-off location, Hatch removed the pins for both gates, loosened the vertical straps for both gates, and brought both gates to 90 degrees while he waited for the customer to clear a space for unloading. Once the space was cleared, Hatch released each of the two straps on the front load, intending to walk to the back of the trailer and lower the front gate to the ground using the remote hydraulic switch. However, as soon as Hatch released the second strap, the gate fell. Hatch was caught beneath the gate and suffered injuries resulting in paraplegia.

II.

The action was tried to a jury in a one-week trial. There was no objection to the form of the two key questions put to the jury on the verdict form:

> Q.1.  Was Trail King negligent in designing the N-12 trailer that Dean Hatch was unloading on February 1, 2007 when the accident occurred?
>      . . . .
> Q.3.  Did Trail King breach the implied warranty of merchantability in selling, as designed in 1994, the N-12 trailer that Dean Hatch was unloading on February 1, 2007, when the accident occurred?

The jury was instructed that it would first decide "whether Trail King was all or in part responsible for the design of the N-12 [trailer]."  The court told the jury:

> If you decide it was not, and was instead a mere fabricator of a trailer designed to ADS's specifications and no more, then it cannot be held liable on a theory of defective design unless the defect in the specifications was so obvious that a reasonable fabricator would have rejected the dictated design.

The instruction continued: "If you find, on the other hand, that Trail King designed the N-12 trailer, as it was sold in 1994, either on its own or in substantial collaboration with ADS, you must then consider the law that governs a manufacturer's liability for a design defect."  This largely tracked an instruction proposed by the defendant, which cited to the Restatement (Second) of Torts § 404.  Plaintiffs objected to the "fabrication" instruction.

After explaining the difference between negligence and implied warranty, the court then instructed on a manufacturer's duty "[i]n designing a product," setting forth the factors of gravity of any risk, likelihood of accident, feasibility of safer design, financial cost of feasible alternative design, and any

adverse consequences of design change on the usefulness of the product.  There was no objection to this portion of the charge.

As to the claim of breach of the implied warranty of merchantability, the court instructed:

> The Hatches also claim that Trail King breached what the law terms the "implied warranty of merchantability."  Under the law of implied warranty, a manufacturer who designs and sells a product is held to a guarantee that its product is fit for the ordinary purposes for which the product is intended, including those uses and misuses which are reasonably foreseeable to one engaged in the business of producing and selling that particular kind of product.
>
> Whether a manufacturer intends to make such a guarantee or not is irrelevant.  By law, every sale of a product includes such an implied guarantee.  Liability under a theory of breach of warranty focuses on whether the product was defective and unreasonably dangerous, and not on the conduct of the user or the seller.  The guarantee is present even where the manufacturer has taken reasonable steps to make its product safe.  Thus, a manufacturer may be held liable for the harm caused by a dangerous product without any finding of negligence on its part.

There was no objection to that portion of the charge.

Plaintiffs did object to the next portion of the charge, as emphasized below:

> The reverse, however, is not true.  If a manufacturer is negligent in failing to design its products safely, the manufacturer is, as a matter of law, in breach of the implied warranty of merchantability.  <u>To this rule there is a limited exception in which the implied warranty does not apply.  Where a sophisticated purchaser has complete control</u>

-8-

> over a product's specifications and design and
> itself bears significant responsibility for a
> resulting design defect, the implied warranty
> of merchantability does not apply to the
> fabricator.

Plaintiff's counsel objected to this instruction on the grounds that it violated Mass. Gen. Laws ch. 106, § 2-316A(4) and did not set forth a recognized defense or exception to a manufacturer's duty.

The court then instructed more generally:

> If you find that the N-12 trailer as
> designed was reasonably suited for the
> ordinary foreseeable uses for which it was
> intended, then Trail King did not breach the
> implied warranty of the merchantability.
>
> If, on the other hand, you find that
> Trail King placed the N-12 trailer on the
> market in an unfit condition, then you will
> find that Trail King breached the warranty of
> implied merchantability.

There was no objection to this language.

During their deliberations the jury asked the following question on the warranty issue about the sophisticated status of the purchaser:

> "Re: Question 3," which is the warranty
> question -- "If ADS can be considered a
> sophisticated purchaser, is the remainder of
> the implied warranty of merchantability not
> applicable to Trail King?"

After consultation with counsel, the court answered the question as follows:

Whether or not ADS is a sophisticated purchaser or user of the trailer is not really the issue. . . .

The implied warranty of merchantability has really nothing to do with the state of mind or the experience or sophistication of either the manufacturer or the purchaser. The issue is simply whether as marketed in 1994, was there a defect in the product, the defect that caused the injury of which the Hatches complain.

The only exception, and the only point at which the sophisticated purchaser rule comes into play, is if the purchaser is not simply the purchaser but was also the party that had complete control of the product's specifications, and, therefore, bears significant responsibility to any resulting defect because it was their design, their specifications, that caused the defect.

But once the product is in the market, unless that exception applies, then the sophistication of both buyer and seller have no import on the implied warranty of merchantability.

Does that answer the question?

(Jurors nod affirmatively.)

The plaintiffs told the court that they had "no issues" with this answer "other than the ones [they] already [had] on the record, with that whole issue."

## III.

We review de novo a claim that a jury instruction "embodied an error of law." United States v. Silva, 554 F.3d 13, 21 (1st Cir. 2009). We review for abuse of discretion "whether the instructions adequately explained the law or whether they tended to

confuse or mislead the jury on the controlling issues." Id. (quoting United States v. Ranney, 298 F.3d 74, 79 (1st Cir. 2002)) (internal quotation marks omitted). We look at the instructions as a whole, not in isolated fragments. See United States v. Griffin, 524 F.3d 71, 76 (1st Cir. 2008). We review a denial of a motion in limine for abuse of discretion. JOM, Inc. v. Adell Plastics, Inc., 193 F.3d 47, 50 (1st Cir. 1999).

As to substantive law, we start with Massachusetts law principles, particularly the implied warranty of merchantability. See Mass. Gen. Laws ch. 106, § 2-314. In Massachusetts, warranty liability may be premised on defective design. Haglund v. Philip Morris Inc., 847 N.E.2d 315, 322 (Mass. 2006). Similarly, a design defect claim may be predicated on a negligence theory. Id. at 322 n.9. The two theories are not identical. There can be a finding of breach of warranty but not of negligence. Id. A finding of negligence, however, is also a finding of breach of the warranty of merchantability. Id. (citing Colter v. Barber-Greene Co., 525 N.E.2d 1305, 1313 (Mass. 1988)). As to warranty, "the relevant inquiry focuses on the product's features, not the seller's conduct." Id. at 322. The court correctly instructed on these points.

The parties agree, accurately, that Massachusetts does not require privity, so the fact that Hatch was not party to the contract between Trail King and ADS or in privity with ADS does not

-11-

eliminate any implied warranty.  See Mass. Gen. Laws ch. 106, § 2-318.  Warranties may extend to third parties when it is reasonable to expect that those persons may use the goods and they are injured by the breach of warranty.  Mass. Gen. Laws ch. 106, § 2-318, Massachusetts Code Comment.

Plaintiffs' position is that there is no limitation on the warranty liability of a manufacturer in these circumstances, even if it did not design the goods at issue.  Plaintiffs argue this is a case about an improper attempt by Trail King to limit implied warranties.  Under Mass. Gen. Laws ch. 106, § 2-316, implied warranties may be excluded or modified under some circumstances, subject to limitations set forth in Mass. Gen. Laws ch. 106, § 2-316A.  More particularly, under state law, implied warranties may be excluded or modified by writings.[4]  Implied warranties can also be excluded or modified under § 2-316(3)(c) "by course of dealing or course of performance or usage of trade."

The plaintiffs argue that this is a case about <u>disclaimer</u> of warranties, and that by operation of § 2-316A(4) this case is excluded from any disclaimer of implied warranties.  They say the outcome of the case is governed by <u>Ferragamo</u> v. <u>Massachusetts Bay Transportation Authority</u>, 481 N.E.2d 477 (Mass. 1985), particularly by <u>Ferragamo</u>'s statement that the general rule is that "[t]he

---

[4]  This case involves no displacement of an implied warranty by an express warranty.

employee of the buyer is not bound by a disclaimer of warranties in the sales contract." Id. at 482 (quoting 3 R.A. Anderson, Uniform Commercial Code § 2-316:56 (3d ed. 1983)) (internal quotation marks omitted). We disagree with all three points and explain why, even so, that does not resolve the case.

First, the language of § 2-316 does not apply to this case. Entitled "Limitation on Exclusion or Modification of Warranties," § 2-316A makes § 2-316 inapplicable to the extent provided by § 2-316A. Plaintiff relies on § 2-316A(4), which provides:

> Any language, oral or written, used by a seller or manufacturer of goods and services, which attempts to exclude or modify any implied warranties of merchantability and fitness for a particular purpose or to exclude or modify remedies for breach of those warranties, shall be unenforceable with respect to injury to the person. This subsection does not affect the validity under other law of an agreement between a seller or manufacturer of goods and services and a buyer that is an organization (see Section 1-201(28)), allocating, as between them, the risk of damages from or providing indemnity for breaches of those warranties with respect to injury to the person.

That provision is, by its terms, inapplicable here. Trail King has not attempted to exclude or limit implied warranty responsibility by language, either oral or written. We also note that § 2-316A(4) does not purport to govern exclusion of implied warranties that arise by "course of dealing or course of performance or usage of trade," the provision that defendant suggests is in play.

-13-

The decision in Ferragamo also does not resolve the issue here. Rather, Ferragamo involved an attempt in a contract of sale to disclaim warranties by writing. This case does not involve such an attempt, nor is that the issue. More than that, Ferragamo is not a design defect case, much less a case in which the defendant built to the specifications of the plaintiff's employer.

Somewhat more relevant but still not on point are the decisions, cited to us by the parties, in Commonwealth v. Johnson Insulation, 682 N.E.2d 1323 (Mass. 1997) and Cumberland Farms, Inc. v. Drehmann Paving & Flooring Co., 520 N.E.2d 1321 (Mass. App. Ct. 1988). Johnson did not involve a suit by a third party to a contract but instead involved a suit between two contracting parties. It was a suit between the Commonwealth and its contractor Johnson Insulation for recovery of remediation costs for removal of asbestos. Although the government specified materials that Johnson was to supply and install, the court concluded that "the specifications supplied by the Commonwealth were not so detailed, precise, and complete as to exclude [the implied] warranty [of merchantability]." Johnson, 682 N.E.2d at 1327-28. Moreover, the court explained, "[t]he asbestos-containing products supplied by Johnson were 'off-the-shelf,' commercially available goods that were not specially designed or manufactured for the Commonwealth." Id. at 1329.

-14-

*Johnson* is not on point. It was not a design defect case; it was concerned with specifications of materials and not design specifications; the materials specifications left some discretion in the contractor as to choice of materials; the materials were off-the-shelf rather than designed by the Commonwealth; and the theory of liability was a failure to warn theory. None of those things are true here. Moreover, the failure to warn theory (on which *Johnson*'s theory of breach of warranty turned) has been abandoned in this case.

*Johnson* is, nonetheless, significant. It did not overrule the state appeals court decision in *Cumberland Farms*, but instead limited its holding. In *Cumberland Farms*, the defendant had installed a brick floor in a dairy plant according to specifications provided by the plaintiff buyer. During the installation, the defendant recommended modifying the specifications to include expansion joints that might prevent damage to the floor. The buyer rejected that recommendation. Within a few years of the installation, the lack of expansion joints resulted in substantial damage to the floor. *Johnson* characterized *Cumberland Farms* as holding that there was no implied warranty of merchantability by the defendant and as between contracting parties where the plaintiff had provided flawed specifications. *Johnson* explained that "the failure of the floor was caused not by the quality of the materials (i.e., bricks)

supplied by the installer, nor by a lack of craftsmanship on its part, but by innate flaws in engineering and design that were wholly attributable to the plaintiff."  Johnson, 682 N.E.2d at 1329.  Cumberland Farms is somewhat helpful to Trail King.[5]

The lack of a clear answer from state precedent still leaves the question of the nature of the implied warranty under Massachusetts law in these circumstances.  More particularly, the question is whether Massachusetts law would recognize an implied warranty of merchantability as to an innocent third party victim under these circumstances, where it was the plaintiff's employer, and not the maker of the gate, which specified the gate design that allegedly caused the injury.  The district court's combined jury instructions essentially provided that Massachusetts law could allow some form of implied warranty to the plaintiff here, but that such an implied warranty would be subject to limits, as it articulated.

The parties do not cite any Massachusetts case on point on either the negligence theory or the implied warranty theory, and we have found none.[6]  So we go back to some basics: the Restatement (Second) of Torts, and decisions of other courts under the relevant

---

[5]  The jury necessarily found that if Trail King contributed at all to the engineering and design of the trailer, it did not do so negligently.

[6]  At no time did either party request that the trial court certify to the Massachusetts courts any question.

-16-

provisions of the Restatement, which have been recognized sources of guidance for Massachusetts. The Supreme Judicial Court in Johnson (and other cases) has stated that as a matter of social policy the state legislature has decided that the implied warranty "should establish liability as comprehensive as that to be found in other jurisdictions that have adopted the tort of strict product liability." 682 N.E.2d at 1326. That liability is "congruent in nearly all respects with the principles expressed in Restatement (Second) of Torts § 402A (1965)." Id. (quoting Back v. Wickes Corp., 378 N.E.2d 964, 969 (Mass. 1978); see also Haglund, 847 N.E.2d at 321-22. The question is whether Massachusetts will also follow Restatement (Second) of Torts § 404 and its commentary. We think that is likely.

Two Restatement provisions are relevant: § 402A and § 404. Plaintiffs rely on the Restatement (Second) of Torts § 402A,[7] which is entitled, "Special Liability of Seller of Product for Physical Harm to User or Consumer." The section recognizes strict liability in tort, under a warranty theory, as has the Supreme Judicial Court. See Haglund, 847 N.E.2d at 321-22; Johnson, 682 N.E.2d at 1326-27; Restatement (Second) of Torts § 402A cmt. m; accord Cigna Ins. Co. v. Oy Saunatec, Ltd., 241 F.3d

_____

[7] Section 402A has been superceded by the Restatement (Third) of Torts: Products Liability, but Massachusetts law has continued to recognize it. See Haglund v. Philip Morris Inc., 847 N.E.2d 315 (Mass. 2006).

-17-

1, 15 (1st Cir. 2001). A seller breaches its warranty obligation under § 402A when it sells any product in a defective condition unreasonably dangerous to the consumer. Restatement (Second) of Torts § 402A. The Supreme Judicial Court has justified the "stringent responsibility placed on sellers under [this] warranty scheme" in part on the ground that a manufacturer should compensate the public for injuries where the public is forced to rely on the manufacturer's superior knowledge. See Haglund, 847 N.E.2d at 322; Restatement (Second) of Torts § 402A cmt. c.

In our view, the Restatement itself requires that we also consider the Restatement (Second) of Torts § 404. Section 404 is entitled "Negligence in Making, Rebuilding, or Repairing Chattel." In general, the section provides that "an independent contractor [who] negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattels." Restatement (Second) of Torts § 404. However, where a contractor builds to the specifications of another, comment a provides:

> In such a case, the contractor is not required to sit in judgment on the plans and specifications or the materials provided by his employer. The contractor is not subject to liability if the specified design or material turns out to be insufficient to make the chattel safe for use, unless it is so obviously bad that a competent contractor would realize that there was a grave chance that his product would be dangerously unsafe.

Restatement (Second) of Torts § 404 cmt. a.

-18-

Plaintiff responds that Trail King is not an independent contractor, but a manufacturer. Under the facts of this case, calling Trail King a manufacturer does not make § 404 inapplicable. The real issue is the role of the defendant in building to the specifications of another that part which caused the injury.

For these purposes, even assuming Mass. Gen. Laws ch. 106 is relevant, it does not distinguish manufacturers from independent contractors. The Restatement (Second) of Torts also does not include relevant terms which expressly distinguish manufacturers from independent contractors. In fact, it does not define the term "manufacturer" at all. And while it defines the term "independent contractor" twice, neither instance is especially helpful here.[8]

The cases analyzing the Restatement in this context tend to look to the reality of the situation, not to labels. For example, in Hunt v. Blasius, 384 N.E.2d 368 (Ill. 1978), a highway signpost manufacturer installed a highway exit sign pole for the Illinois state government, using mandated state design and installation specifications. While driving on the highway, the plaintiffs collided with the pole and were seriously injured.

---

[8] The Restatement defines "independent contractor" in the commentary to § 403 and § 409. Section 403 identifies an independent contractor as one who has "charge and control" over the details of constructing, rebuilding, or repairing a chattel. Restatement (Second) of Torts § 403 cmt. a. Section 409 defines an independent contractor as "any person who does work for another under conditions which are not sufficient to make him a servant of the other." Restatement (Second) of Torts § 409 cmt. a.

-19-

Plaintiffs sued the manufacturer for negligence and defective design. Treating the manufacturer as an independent contractor under the terms of § 404, the court held that the manufacturer had "no duty to third persons to judge the plans, specifications, or instructions which [it had] merely contracted to follow . . . unless they [were] so obviously dangerous that no competent contractor would follow them." Id. at 371.

Similarly, in Littlehale v. E. I. du Pont de Nemours & Co., 268 F. Supp. 791 (S.D.N.Y. 1966), aff'd, 380 F.2d 274 (2d Cir. 1967), the defendant manufactured blasting caps for the U.S. government pursuant to the government's specifications. Plaintiffs, employees of the Navy, were injured when the caps detonated prematurely and sued on the theory of failure to warn. The court granted summary judgment to the defendant, stating in an extensive footnote that:

> In the 'typical' products liability case, the manufacturer of the product, having the sole decision as to the method and means of manufacture and all other details, is in reason the party to be charged since it is his act or failure to act which was the proximate cause of the accident. The case at bar, however, presents a different picture since here an independent contractor, having no discretion or control over production and means of manufacture is directed to comply with the strict contract requirements and specifications contained therein. It is in that situation that the 'independent contractor' exception is applicable, relieving the independent contractor of liability if he follows plans which are not so glaringly or

> patently insufficient that an ordinary prudent
> manufacturer would not follow them.

Id. at 802 n.16.

This principle from Littlehale has been widely applied by other courts. See, e.g., Spangler v. Kranco, Inc., 481 F.2d 373, 375 (4th Cir. 1973); Moon v. Winger Boss Co., 287 N.W.2d 430, 433 (Neb. 1980); Campbell v. ITE Imperial Corp., 733 P.2d 969 (Wash. 1987) (en banc). In Moon, for example, an employee at a beef processing plant was injured when he became entangled in machinery manufactured by the defendant to the specifications of the employer. 287 N.W.2d at 431. The employee sued the manufacturer on the theory of defective design. Id. at 432. Referencing Littlehale and applying the Restatement (Second) of Torts § 404, comment a, the court held that "a manufacturer is not liable for injuries to a user of a product which it has manufactured in accordance with plans and specifications of one other than the manufacturer, except when the plans are so obviously, patently, or glaringly dangerous that a manufacturer exercising ordinary care under the circumstances then existing would not follow them." Moon, 287 N.W.2d at 434.

Of the cases cited by the parties, as well as those we have found involving facts like these and construing § 404, the majority limit the liability for fabricators/manufacturers who build to specification under both implied warranty and negligence

-21-

theories.  Indeed, "a growing majority of courts have [held] that even in strict liability a manufacturer who merely fabricates a product according to the purchaser's design is not responsible, in the absence of an obvious defect, if the design proves bad."  2 Madden & Owen on Prods. Liab. § 19:4 (3d ed.).  Accordingly, "the soundness of a contract specifications defense to design defect claims does not depend on the underlying theory of liability."  Id.

For example, in Garrison v. Rohm & Haas Co., 492 F.2d 346 (6th Cir. 1974), the Sixth Circuit held that no defective design theory could be asserted against a defendant manufacturer who had built to the specifications of the buyer.  Id. at 353.  An employee was injured by a dolly that had been manufactured by the defendant Orangeville Manufacturing Company according to the exact designs, plans, and specifications prepared and furnished by the employer. Id. at 347.  The court concluded that "[t]o hold Orangeville liable for defective design would amount to holding a non-designer liable for design defect.  Logic forbids any such result." Id. at 351. The court noted that manufacturers producing goods for the public at large generally have a duty to test the design for safety. Id. at 353.  But where a manufacturer builds to specifications, the court reasoned, the manufacturer is not required to test for design safety; "the only thing that such a manufacturer should reasonably be expected to test for is whether the specifications have been

complied with."  Id.  The court reasoned that it is the designing customer who has the basic responsibility for testing.  Id.

The Kentucky Supreme Court has also held that § 402A does not apply when the seller manufactures the product in accordance with the specifications of the employer.  See McCabe Powers Body Co. v. Sharp, 594 S.W.2d 592, 594 (Ky. 1980).  In McCabe, the defendant manufactured an aerial boom for the Kentucky Department of Highways in exact accordance with the department's specifications, which required that the bucket on the boom have one open side.  The plaintiff, an employee of the department, was injured when he fell out of the bucket's open side.  The court declined to apply § 402A, reasoning that the case was "entirely different from the classic products liability case due to the added factor of design according to the buyer's specifications."  Id. Even though the dangers of the bucket's open side were "open and obvious," the court concluded that the manufacturer was protected from liability for injuries caused by use of the product because the product was manufactured according to plans furnished by the buyer.  Id.

Similarly, the Supreme Court of Ohio has rejected a strict liability theory against a company that manufactured tanker cars to the specifications of the buyer.  See Queen City Terminals, Inc. v. Gen. Am. Transp. Corp., 653 N.E.2d 661, 671-73 (Ohio 1995). The court found that the rationale for strict liability under

Restatement (Second) of Torts § 402A did not apply in such a situation because the manufacturer did not launch its product into the stream of commerce. Queen City Terminals, 653 N.E.2d at 672. Where the product is custom built, the court reasoned, the manufacturer is not in any better position than the consumer to assume the costs of design safety. Indeed, unlike the general products liability case, "the manufacturer has no opportunity to spread the costs throughout its many customers, because no other customers exist." Id.[9]

The 1982 New Jersey case on which plaintiffs rely, and which does not discuss Restatement (Second) of Torts § 404, does not persuade us that Massachusetts would follow its reasoning. See Michalko v. Cooke Color & Chem. Corp., 451 A.2d 179 (N.J. 1982).

We conclude that the basic concepts[10] in the instructions conveyed to the jury were not erroneous. Any division between

---

[9] Similarly, the Fourth Circuit has twice explained in failure to warn cases that a manufacturer is not liable for a design defect if the product is manufactured according to the buyer's specifications unless the specifications are obviously dangerous and should not be followed. See Austin v. Clark Equip. Co., 48 F.3d 833, 837 (4th Cir. 1995); Spangler v. Kranco, Inc., 481 F.2d 373, 375 (4th Cir. 1973).

[10] The reference in the jury instructions to a sophisticated buyer apparently came from the defendant's requested instructions. As the district court told the jury, the issue is not the sophistication of either the buyer or seller. The awkwardness and irrelevancies in the instruction on implied warranty's reference to sophisticated purchases are not the subject of plaintiffs' claims of error, and in any event, they were corrected in the district court's answer to the jury question.

negligence and implied warranty is irrelevant under the circumstances and the totality of the instructions here. In the end, the instructions captured the law under § 402A, which governs strict liability, even when it is articulated as a breach of warranty.

As Judge Posner has pointed out, the issue is one of imposing back-up liability for design defects on persons other than the designer. See Mesman v. Crane Pro Servs., 512 F.3d 352, 358-59 (7th Cir. 2008) (citing Restatement (Second) of Torts § 404). There are policy arguments which may be made on both sides of this question, and we appreciate the illumination provided on this point by the briefs, including the amicus brief of the Massachusetts Academy of Trial Attorneys.

The district judge drew the line in his instructions where the Restatement (Second) of Torts § 404 does, and we cannot say that was error. The Massachusetts courts have not adopted plaintiffs' theory of the case, and we, as a federal court, have no warrant to extend state product liability law. See Warren v. United Parcel Serv., Inc., 518 F.3d 93, 100 (1st Cir. 2008) ("[A] federal court applying state law must be hesitant to blaze a new (and contrary) trail." (quoting Kassel v. Gannett Co., 875 F.2d 935, 949 (1st Cir. 1989))); Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1186-87 (1st Cir. 1996) ("[A]s a federal court hearing this state law issue . . . , we are reluctant to extend [state] law

-25-

'beyond its well-marked boundaries.'" (quoting <u>Markham</u> v. <u>Fay</u>, 74 F.3d 1347, 1356 (1st Cir. 1996))).  Our holding also disposes of the motion in limine question.

Affirmed.  No costs are awarded.